# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| WENDELL SNIDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:08-CV-53 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Wendell Snider brought this suit to contest a denial of disability benefits by Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). On January 8, 2009, this Court entered an Opinion and Order ("Order") that reversed the Commissioner's denial of benefits and remanded the case to the Commissioner for further proceedings. (Docket # 24.) Snider filed a motion and a supplemental motion to recover attorney fees in the amount of $9,248.00 under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Docket ## 26, 34.) The Commissioner opposes Snider's fee request, arguing that its litigation position was "substantially justified." (Docket # 29.)

For the reasons set forth herein, Snider's motion for attorney fees will be GRANTED.

## I. LEGAL STANDARD

Under the EAJA, "[e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified . . . ." 28 U.S.C. § 2412(d)(1)(A). The substantial justification standard requires that the Commissioner show that

its position was grounded in "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000) (citation and internal quotation marks omitted); *see also Cunningham v. Barnhart*, 440 F.3d 862, 864 (7th Cir. 2006); *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004). The Commissioner bears the burden of establishing that its position was substantially justified. *Cunningham*, 440 F.3d at 863; *Golembiewski*, 382 F.3d at 724.

The Court may award EAJA fees if either the Commissioner's prelitigation conduct or its litigation position was not substantially justified. 28 U.S.C. § 2412(d)(2)(D); *Cunningham*, 440 F.3d at 863 (citing *Golembiewski*, 382 F.3d at 724). However, the court must "make only one determination for the entire civil action." *Golembiewski*, 382 F.3d at 724. Thus, a court must make a "global assessment" to determine whether the Commissioner was "substantially justified in continuing to push forward at each stage." *Hallmark Constr.*, 200 F.3d at 1081.

## II. DISCUSSION

In its January 8, 2009, Order, the Court reversed and remanded the Commissioner's decision, concluding that the ALJ erred by failing to consider the opinion of Snider's treating physician in contravention of 20 C.F.R. § 404.1527. (Jan. 8, 2009, Op. and Or. 13-17.) The Commissioner, however, argues that it was substantially justified in defending the ALJ's decision; his argument is ultimately unpersuasive.

### A. *The ALJ's Failure to Evaluate the Opinion of Snider's Treating Physician Was Not Substantially Justified*

The Court remanded the ALJ's decision on the sole basis that the ALJ failed to address the opinion of Snider's treating physician, Dr. Doravari. Dr. Doravari concluded that Snider has

2

chronic back, neck, and right shoulder pain; that emotional factors contribute to the severity of Snider's symptoms and functional limitations; that his pain is severe enough to often interfere with attention and concentration; and that Snider would likely be absent about two days per month as a result of his impairments. (Tr. 442-45.) The ALJ, however, neglected to once mention Dr. Doravari, let alone discuss her opinion, when weighing the physicians' opinions in Snider's case.

Undaunted by the ALJ's clear omission, the Commissioner argued on appeal that the error was harmless, since it is likely, in the Commissioner's view, that the ALJ would have simply discounted Dr. Doravari's opinion if he had considered it. This Court rejected that argument, noting that Dr. Doravari's opinion was arguably consistent with several other physicians' opinions, and therefore it was uncertain how the ALJ might weigh this evidence. (Jan. 8, 2009, Op. and Or. 16-17.) The Commissioner now attempts to resurrect essentially the same argument, contending this time that although the ALJ's omission was a basis for remand, the Commissioner's litigation position was nevertheless substantially justified.

In this instance, however, the Commissioner did not have a reasonable basis in law for his litigation position because it contradicted the precedent of both the Social Security Administration and the Seventh Circuit Court of Appeals. *See, e.g., Jenkins v. Astrue*, 544 F. Supp. 2d 736, 741 (N.D. Ind. 2008) ("When an ALJ's decision violates 'clear and long judicial precedent' a finding of a lack of substantial justification is warranted." (citing *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004)).

As the regulations make clear, "[e]ven if the ALJ finds that the opinion is not entitled to controlling weight, []he may not simply reject it. Rather, []he must evaluate the opinion's

3

weight by looking at the length, nature and extent of the plaintiff's and physician's treatment relationship; the degree to which the opinion is supported by the evidence; the opinion's consistency with the record as a whole; whether the doctor is a specialist; and 'other factors.'" *Brown v. Barnhart*, 298 F. Supp. 2d 773, 788 (E.D. Wis. 2004) (citing 20 C.F.R. § 404.1527(d); SSR 96-2p). And here, the ALJ contravened longstanding administrative and judicial precedent when he failed to evaluate the opinion of Snider's treating physician. *See* 20 C.F.R. § 404.1527(d) ("[W]e will evaluate every medical opinion we receive."); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (opining that when probative evidence is left unmentioned by the ALJ, the court is left to wonder whether it was even considered); *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) (stating that the ALJ's failure to mention a physician's report prohibits the court from evaluating "whether the ALJ properly rejected this evidence in favor of the other doctors' reports, or even [from ensuring] that the ALJ examined th[e] report, unless the ALJ explains his reasoning"); *Ridinger v. Astrue*, 589 F. Supp. 2d 995, 1006 (N.D. Ill. 2008) (remanding case and finding that the ALJ's failure to address a treating physician's opinion was not harmless error "[b]ecause the ALJ relied on the consulting physician's opinion that [claimant] was not disabled . . . without articulating the reasons for his decision not to accord controlling weight to the opinion of [claimant's] treating physician"); *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1059 (E.D. Wis. 2005) ("Given their prominence in social security proceedings, it is difficult to see how ignoring a treating source report can ever be reasonable."); *Windus v. Barnhart*, 345 F. Supp. 2d 928, 943 (E.D. Wis. 2004) (remanding an ALJ's decision when the ALJ ignored the opinion of two consulting physicians, noting, "It is well-established that an ALJ may not simply ignore evidence that is contrary to his conclusion."). "In light of this

4

clear line of precedent, both the ALJ's [omission] and the Commissioner's subsequent defense of that [omission] lack substantial justification." *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) (awarding EAJA fees where the ALJ's hypothetical and Commissioner's defense of it contradicted longstanding agency and judicial precedent).

Moreover, courts have concluded that the Commissioner's defense was not substantially justified where the ALJ ignored or inadequately evaluated a physician's opinion. *See Samuel v. Barnhart*, 316 F. Supp. 2d 768, 773-74 (E.D. Wis. Apr. 29, 2004) (rejecting Commissioner's contention that it was reasonable for the ALJ to ignore the report of one of the claimant's treating physicians and awarding EAJA fees partially on that basis); *Wates v. Barnhart*, 288 F. Supp. 2d 947, 952 (E.D. Wis. Oct. 17, 2003) (awarding EAJA fees where the ALJ ignored a portion of the treating physician's opinion that contradicted the ALJ's RFC findings); *Henderson v. Barnhart*, 257 F. Supp. 2d 1163, 1168 (E.D. Wis. Nov. 20, 2002) (finding that the Commissioner's position was not substantially justified where he failed to consider a report from the plaintiff's treating physician); *Dominguese v. Barnhart*, No. 99-C-596, 2002 WL 32318281, at *3 (E.D. Wis. July 12, 2002) (awarding fees where ALJ failed to properly evaluate the opinion of a treating physician); *Fisk v. Astrue*, No. 3:05-cv-145, 2009 WL 161335, at *2-4 (S.D. Ohio Jan. 22, 2009) (awarding EAJA fees where the ALJ failed to properly evaluate a treating physician's opinion); *Henriquez v. Chater*, No. 94 Civ. 7699 (SS), 1997 WL 45351, at *3 (S.D.N.Y. Feb. 5, 1997) (noting that "commonly allow EAJA fees where the treating physician rule is abrogated" and collecting cases).

The Commissioner nevertheless contends that he was substantially justified in defending the ALJ's decision because, in his view, Dr. Doravari's opinion was wholly unsupported and

5

contradicted other substantial evidence of record. Contrary to the Commissioner's position, this is not a case where the physician's opinion is so patently deficient that the ALJ could not have credited it in any event. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) ("We do not decide the question of whether a *de minimis* violation may qualify as harmless error. For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal."). As this Court noted in its Opinion, Dr. Doravari's opinion

> was not obviously inconsistent with the statements of at least three physicians, including Dr. Bacchus's opinion that Snider had the capacity for working only four hours per day, Dr. Lazoff's opinion that Snider was unable to perform substantial manual labor and was extremely limited due to his overall pain complaints, as well as Dr. Levine's statement that Snider was permanently and totally disabled. Moreover, the last VE to testify in Snider's DIB hearings stated that competitive employment was not possible if Snider missed more than one day of work per month. (Tr. 973-74.)

(Jan. 8, 2009, Op. and Or. 16-17.)

The Commissioner attempts to diminish this support for Dr. Doravari's opinion by arguing that the ALJ properly discounted those physicians' opinions which are arguably consistent with Dr. Doravari's opinion. While it is true that the ALJ did address the other doctors' opinions, that does not necessarily lead to the conclusion that Dr. Doravari's position would have automatically been discounted. "[A]lthough we agree that the ALJ might have discounted Dr. [Doravari's] opinion for the same reason that he discounted [the other doctors' opinions], another possibility is that the ALJ simply overlooked Dr. [Doravari's] opinion altogether." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 748 (6th Cir. 2007). Under these circumstances, the Commissioner was not substantially justified in defending the ALJ's complete failure to even mention, let alone analyze in accordance with the Commissioner's own

regulations, a treating source opinion.[1]

The Commissioner also argues that the ALJ's error in ignoring Dr. Doravari's opinion was harmless because the ALJ's residual functional capacity (RFC) finding accounted for Snider's right shoulder problems. The ALJ's RFC determination, however, does not account for all of Dr. Doravari's findings, and therefore this is not an instance where the Commissioner has "adopt[ed] the opinion of the treating source or [made] findings consistent with the opinion," making it "irrelevant that the ALJ did not give weight to the treating physician's opinion . . . ." *See Wilson*, 378 F.3d at 547.[2]

At the end of the day, the Court must make one global determination regarding whether the Commissioner's position was substantially justified. *Golembiewski*, 382 F.3d at 724; *Godbey v. Massanari*, No. 99 C 2690, 2001 WL 1035205, at *2 (N.D. Ill. Sept. 4, 2001); *Lane v. Apfel*, No. 99 C 2640, 2001 WL 521835, at *3 n.6 (N.D. Ill. May 16, 2001) (emphasizing that a court must not count arguments, but instead focus on the "totality of the circumstances" when

---

[1] Moreover, on the Social Security appeal, Snider argued that the ALJ inadequately evaluated the opinion of Dr. Bacchus, an examining physician. The Court did not reach the issue, since it already had grounds to remand the case. However, a brief look at the ALJ's opinion and the administrative record reveals that although the ALJ listed Dr. Bacchus's findings, he merely concluded, without explanation, that his opinion "is not well-supported by his own physical findings and his opinion is therefore not given much weight." (Tr. 21.) The ALJ's explanation seems deficient, considering that Dr. Bacchus conducted physical and musculoskeletal exams revealing antalgic gait and range of motion deficits in Snider's neck, lower back, shoulders, hips, and knees. (Tr. 807.) Dr. Bacchus even cited to an objective test indicating severe degenerative joint disease in Snider's right knee. (Tr. 807.) Considering that the ALJ provided only cursory and undeveloped reasoning to discount Dr. Bacchus's opinion in the face of Dr. Bacchus's objective medical findings, the Commissioner's argument minimizing the support of Dr. Bacchus's opinion to Dr. Doravari's is also unpersuasive.

[2] The Commissioner further attempts to marginalize Dr. Doravari's opinion by pointing out that it was given about eleven months after Snider's date last insured (DLI). Dr. Doravari, however, had been Snider's treating physician for years before Snider's DLI (*see* Tr. 442), and her opinion does not appear to be limited solely to Snider's condition after his DLI. For example, Dr. Doravari stated that she had been Snider's physician for *ten years*, and she explained that Snider has seizures "3-6 times a year" and headaches "3-4 times a week," and that the description of symptoms and limitations applied indefinitely. (Tr. 442-45.) *See, e.g., Blom*, 363 F. Supp. 2d 1041, 1059 (E.D. Wis. 2005) ("[T]he ALJ must consider evidence that post-dates the relevant period to the extent that it corroborates or supports the evidence from the relevant period."). Consequently, this attempt to sweep away the significance and relevance of Dr. Doravari's opinion is futile.

7

considering whether the Commissioner's position was substantially justified). "In general, . . . if the case for remand is strong and clear-cut, *Golembiewski* teaches that it will probably be an abuse of discretion to deny fees. If the case for remand is closer, and especially if it is focused primarily on an inadequate explanation of what might be a reasonable decision, *Cunningham* teaches that it will probably not be an abuse of discretion to deny fees." *Purvis v. Barnhart*, No. 1:04-cv-2124 DFH VSS, 2006 WL 3354518, at *2 (S.D. Ind. Nov. 16, 2006).

Here, the ALJ's clear error in failing to consider a treating source opinion, significant evidence in Snider's favor, persuades this Court that the Commissioner's position as a whole was not substantially justified. Consequently, the Commissioner fails to carry its burden of establishing that its defense of the ALJ's decision was substantially justified, *Cunningham*, 440 F.3d at 864, and thus Snider is entitled to an award of fees.

## B. The Fee Request Is Reasonable

Snider moves for a total of $9,248.00 for 54.40 hours of work performed in federal court on this case. (*See* Docket ## 26, 34.) The Commissioner, however, contends that Snider's fee request is excessive.

Snider, as the fee applicant, has the burden of proving that the EAJA fees sought are reasonable. *See* 28 U.S.C. § 2412(d)(1)(B); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Factors the Court should consider in evaluating the reasonableness of a fee request are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

8

*Hensley*, 461 U.S. at 430 n. 3.

In addition, "[h]ours that are not properly billed to one's *client* are also not properly billed to one's *adversary* pursuant to statutory authority." *Id.* at 434 (internal quotation marks and citation omitted). "As a result, the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Davenport v. Astrue*, No. 2:07-CV-0064-PRC, 2008 WL 2691115, at *7 (N.D. Ind. July 3, 2008) (citing *Hensley*, 461 U.S. at 434). "The amount of a fee award is left to the discretion of the district court because of its 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Id*. (quoting *Hensley*, 461 U.S. at 437).

The Commissioner takes issue with the amount of time, 3.95 hours, Snider's attorney Joseph Shull spent on drafting his reply brief during the appellate proceedings, arguing that the brief contains only two pages of substantive argument and largely repeats the points made in Snider's opening brief. (Resp. Br. 7.) The Commissioner also contends that one of attorney Shull's entries, .2 hours for a phone call, is irrelevant to the instant case and should not be billed to the government. (Resp. Br. 7-8.)

In reply, attorney Shull concedes that the .2 hour-phone conversation should not be billed, and he consequently subtracted that amount from the total hours requested in his supplemental affidavit in support of his motion for attorney fees. (Reply Br. 8-9; Supplement Aff. 2.) With respect to his reply brief, he also explains that he spent one hour reviewing the parties' briefs and making notes, 2.75 hours drafting the brief, and .2 hours making final additions and corrections. (Reply Br. 8-9.) Moreover, he contends that he needed to review

9

additional facts and arguments to respond to the Commissioner's *post hoc* arguments. (Reply Br. 9.)

The Court finds that the 3.95 hours that attorney Shull spent preparing the reply brief were reasonable. Snider presented four issues in this case: the ALJ's evaluation of the Dr. Doravari's opinion; the ALJ's evaluation of the opinion of examining physician, Dr. Bacchus; the ALJ's evaluation of the credibility of Snider's symptom testimony; and the discrepancy between the ALJ's RFC determination with the state agency physicians' opinions upon which he relied. Thus, the 3.95 hours average to less than one hour per issue in this case. In particular, the issues regarding the physicians' opinions and Snider's credibility are multi-faceted and require a close and careful analysis of the record. *See, e.g., Dominguese*, 2002 WL 32318281, at *6. Moreover, contrary to the Commissioner's contention, Shull responded to the arguments presented in the Commissioner's response brief, particularly with respect to the issue of Dr. Doravari's opinion, and therefore he did not merely re-hash his opening brief's arguments. Given the complexity and variety of issues in this case, attorney Shull's 3.95 hours is a reasonable amount of time to spend on Snider's reply brief.[3] Accordingly, Snider's fee request will be granted.

### C. The Attorney Fees May Be Awarded Directly to Attorney Shull

Lastly, the Commissioner objects to the request that the fees be paid directly to attorney Shull, rather than Snider as the "prevailing party," absent evidence that the EAJA fees have been

---

[3] And notably, the total amount of time that attorney Shull spent working on this case, 54.40 hours, appears to be in line with other Social Security cases in this circuit. *See Dominguese*, 2002 WL 32318281, at *6-7 (finding 56.3 hours a reasonable amount of time and collecting cases indicating that fee awards from 53.5 to 66.95 hours of work were reasonable) (citing *Pouska v. Apfel*, No. 99-C-905, 2002 WL 1263996, at *4-5 (N.D. Ill. June 5, 2002); *Sayles v. Barnhart*, No. 00-C-7200, 2002 WL 989455, at *5 (N.D. Ill. May 14, 2002); *Schutt v. Massanari*, No. 00-C-1370, 2001 WL 1155253, at *3 (N.D. Ill. Sept. 28, 2001)).

assigned to him. (Resp. Br. 8); *see, e.g., Reeves v. Astrue*, 526 F.3d 732, 735 (11th Cir. 2008) (holding that the EAJA directs payment of attorney fees to the party and not the party's counsel), *cert. denied*, 129 S. Ct. 724 (2008); *accord Manning v. Astrue*, 510 F.3d 1246, 1249-50 (10th Cir. 2007), *cert. denied*, 129 S. Ct. 486 (2008); *Thomas v. Shalala*, No. 91 C 5488, 1993 WL 112534, at *5 (N.D. Ill. Apr. 8, 1993) (recognizing "that an award of attorney's fees to a 'prevailing party' belongs to the party entitled to such an award and not to his attorney").

In reply, Snider filed an executed Assignment, assigning to attorney Shull all his rights to any EAJA fees. (Reply Br. 11.) "While the fee award . . . belongs to [the claimant], it is common to make the award directly to the lawyer where the lawyer's contractual entitlement is uncontested or where it is clear that the attorney was acting for his client." *Thomas*, 1993 WL 112534, at *5; *see also Richardson v. Penfold*, 900 F.2d 116, 117 (7th Cir. 1990). Here, it is clear that Snider does not contest attorney Shull's contractual entitlement to the EAJA fees. Accordingly, Snider's request for attorney fees payable to attorney Shull will be granted.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion (Docket # 26) and supplemental motion (Docket # 34) for award of attorney's fees under the EAJA are GRANTED in the amount of nine thousand two hundred and forty-eight dollars ($9,248.00).

SO ORDERED.

Enter for June 23, 2009.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
